ROARK v. PUCKETT.

4-8907                                    221 S. W. 2d 8

Opinion delivered June 13, 1949.

J. Bun Perrymore and Bland, Kincannon & Bethell, for appellant.

Hardin, Barton & Shaw, for appellee.

GRIFFIN SMITH, Chief Justice. In· his complaint Horace C. Roark alleged that unless an equitable lien

should be declared in his favor on designated property in Fort Smith, Lewis W. and Georgia Schneider as owners would be unjustly enriched by money the plaintiff spent on improvements. The Chancellor found that the claim was without equity.

In November 1947 Roark married Alice Puckett, a widow. Mrs. Puckett was then living in a home owned by the Schneiders, who resided in Oklahoma at Muskogee. Mrs. Schneider is Mrs. Puckett's daughter.

According to the plaintiff's testimony, he expected the bride to go with him to a home he owned three miles from Van Buren, in Crawford County, where he lived with his mother. This did not appeal to Mrs. Roark, who assured him she owned a house in Fort Smith, and that his mother would be welcome as a member of the family group. Without making any investigation regarding title, Roark began a reconditioning program, and says he spent $2,910.48 in betterments.

There is testimony that on several occasions Schneider and his wife went to Fort Smith, and knew the improvements were being made. There is a sharp conflict between Roark and the Schneiders regarding what was said. Lewis Schneider testified he told Roark that he and Georgia bought the place as a home for Mrs. Puckett. Roark had just said he intended to install a septic tank, and he (Schneider) made the comment, "You can put the sink in the front room if that is where [Mrs. Puckett] wants it". While Schneider did not contend that he told Roark in so many words title to the property was not in Mrs. Puckett, "I took it for granted that he knew when he asked me about making changes. I told him it was all right with me, because I bought the place as a home for her".

Mrs. Puckett [1] testified that before any improvements were made she told Roark he would have to make other arrangements to care for his mother, and Roark said, in effect, that it would be all right, and he would go ahead with the work; whereupon the mother was sent

[1] Mrs. Puckett, after marrying and divorcing Roark, married a man named Kersh, and bore that name when this suit was tried.

to Texas to live with a sister. There appears to have been a period of matrimonial transition, for Roark moved back to his Crawford County home and filed suit for divorce. The cause was dismissed when the Chancellor found the evidence insufficient. Within a short time Mrs. Puckett sued for divorce. A paragraph in her complaint reads: ''Plaintiff further alleges that there are no property rights outstanding between the respective parties; that she has a home and means of separate maintenance in her own right, and is asking no support from said defendant''. In the decree (Roark having entered his appearance) the Court found that there were no property rights to be settled. Roark had borrowed $150 from Lewis Schneider for use in paying construction costs, promising repayment when his crop of strawberries was marketed.

Before domestic difficulties occurred, Roark had caused his Crawford County property to become an estate by the entirety. Roark says that Mrs. Puckett had borrowed the item of $150 from her son-in-law, but he admitted that ''we'' used the proceeds on the Fort Smith house. At his wife's suggestion he paid $150 to her, the consideration being that Mrs. Puckett would sign papers releasing the Crawford County property.

Roark further testified that when he entered an appearance in the divorce suit, he did not know the Schneiders claimed an interest in the Fort Smith property.

The Chancellor thought a preponderance of the evidence did not show that either of the Schneiders acted fraudulently. We agree that Roark's own carelessness caused his trouble. The slightest investigation would have put him on notice that Mrs. Puckett did not have title. Perhaps he was overconfident in assuming that tranquillity would continue. Be this as it may, he was not justified in thinking that anything the Schneiders did or said was an implied promise to protect him other than as the husband of Mrs. Schneider's mother while the two were in harmonious occupancy of the home.

We are also of the opinion that a duty rested upon Roark, when the divorce suit was filed, to assert his prop-

erty rights; for, as he testified, he did not then know that the Schneiders claimed the residence.

Affirmed.